**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MEHMET ALI BASBOGA**,<br><br>*Petitioner*,<br><br>v.<br><br>**JAMAL L. JAMISON, Warden Of Philadelphia Federal Detention Center, et al.**,<br><br>*Respondents.* | **Case No. 2:26-cv-06694-JDW** |

**MEMORANDUM**

If at first you don't succeed, try, try again.[1] That is the motto guiding the Government's legal strategy to justify its mass detention of noncitizens residing in this country without proper immigration status. At the very least, it seems to have motivated the treatment of Mehmet Ali Basboga. Officers from U.S. Immigrations And Customs Enforcement detained Mr. Basboga under 8 U.S.C. § 1225, even though the Third Circuit had held that ICE lacked the authority to do so. ICE did not offer him any basis for his detention at the time. Ten days later, recognizing that it lacked the authority to detain Mr. Basboga under Section 1225(b), the Government pivoted to a new theory: it designated

[1] Thomas H. Palmer, *The Teacher's Manual: Being an Exposition of an Efficient and Economical System of Education, Suited to the Wants of a Free People* (1840). Edward Hickson later popularized this phrase in his own book, *The Singing Master*, published in 1836. *See* U.S. Dictionary, *If at First You Don't Succeed, Try, Try Again: Definition, Meaning, and Origin* (Jan. 13, 2024), https://usdictionary.com/idioms/if-at-first-you-dont-succeed-try-try-again/.

his arrest as pursuant to 8 U.S.C. § 1226(a). But to proceed under Section 1226(a), the Government had to make an individualized determination about Mr. Basboga, and it never did. He seeks a writ of habeas corpus to remedy that failure, and I will grant it.

# I. BACKGROUND

## A. INA Detention Provisions

The Immigration And Nationalities Act ("INA") allows for detention of noncitizens in removal proceedings under two provisions: 8 U.S.C. §§ 1225 and 1226. I will not spend too much time on Section 1225, as the thrust of the legal issue in this case pertains to Section 1226(a). To paint the full picture, however, I note that Section 1225, entitled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing" provides for the mandatory detention of "applicant[s] for admission." 8 U.S.C. § 1225(b)(2)(A). The Third Circuit confirmed this summer that "applicant[s] for admission" refers to noncitizens detained at the border and does not apply to those found already within the country. *See Buele Morocho v. Warden Philadelphia FDC*, No. 26-1150, 2026 WL 2546223, at *5 (3d Cir. Aug. 28, 2026).

8 U.S.C. § 1226, entitled "Apprehension and detention of aliens," grants the Attorney General discretion to arrest and detain noncitizens currently in removal proceedings (except for those that fall under the statutory exception set forth in Section 1226(c)). *See* 8 U.S.C. § 1226(a). This section further provides that the Government may "continue to detain the arrested" noncitizen or release him on bond or conditional parole.

*Id.* § 1226(a)(1)-(2). Immigration officers make an initial custody determination, after which the noncitizen may appeal that decision to an immigration judge ("IJ") to review during a bond hearing. 8 C.F.R. §§ 1236.1(c)(8), (d)(1). Either party may appeal an IJ's decision to the Board of Immigration Appeals ("BIA"). *Id.* § 1236.1(d)(3). The noncitizen's bond remains subject to revocation under Section 1226(b) if he is released. 8 U.S.C. § 1226(b). To secure his release, a noncitizen must convince the immigration officer charged with his custody decision, or the IJ at a bond hearing, that he poses no flight risk and no danger to the community. *See* 8 C.F.R. §§ 1236.1(c)(8), 1003.19(h)(3); *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019).

When Immigrations And Customs Enforcement ("ICE") detains a noncitizen, it uses two forms to create a record. The first is an I-213 Form, which is the "official record that immigration officials prepare when initially processing a person suspected of being in the United States without lawful permission." *Vera Punin v. Garland*, 108 F.4th 114, 118 (2d Cir. 2024). The BIA has stated that the I-213 Form is "inherently trustworthy and admissible as evidence" to prove deportability. *In re Ponce–Hernandez,* 22 I & N Dec. 784, 785 (BIA 1999). ICE Agents typically use an I-213 Form to document the reasons for their actions. The second form is an I-286 Form, which informs a noncitizen of ICE's decision—*i.e.*, whether to detain or release him and, if he is released, any bond or conditions of release—and informs him of his right to request a custody redetermination hearing before an IJ.

**B. Mr. Basboga's Detention**

Mr. Basboga, a native and citizen of Türkiye, entered the United States in February 2023. Agents from Customs and Border Protection ("CBP") apprehended him upon entry but released him into the United States shortly afterwards and referred him to ICE for enrollment in the Alternatives to Detention program. At the same time, CBP placed Mr. Basboga into removal proceedings and issued him a Notice to Appear before the immigration court. In August 2023, Mr. Basboga file an Application for Asylum and Withholding of Removal with the immigration court.

On August 31, 2026, Mr. Basboga appeared for a regularly scheduled ICE check-in at a field office in Pennsylvania, where ICE arrested and detained him. That same day, ICE agents completed an I-213 form for him, which documented Mr. Basboga's background, including his immigration status and history, criminal record, health, and the details concerning his arrest on that day. (ECF No. 5-2 at 1–4.) The I-213 form states that ICE decided to detain Mr. Basboga "[d]ue to available bed space." (*Id.* at 3.) Though the I-213 form doesn't say it, ICE detained Mr. Basboga under 8 U.S.C. § 1225(b)(2). (Tr. at 38.[2]) However, on September 10, 2026, following the Third Circuit's decision in *Buele Morocho v. Warden Philadelphia FDC*, No. 26-1150, 2026 WL 2546223 (3d Cir. Aug. 28, 2026), ICE executed and served Mr. Basboga with an I-286, advising him of its decision to detain him

[2] Citations to "Tr." refer to the transcript of the hearing that I conducted on September 29, 2026.

during the remainder of his removal proceedings under 8 U.S.C. § 1226 and offering him the opportunity to request a bond hearing before an immigration judge.

### C. Procedural History

On September 5, 2026, just a few days before ICE issued his I-286 form, Mr. Basboga filed a Petition for writ of habeas corpus in this Court while detained at the Federal Detention Center in Philadelphia. He argues that his detention under Section 1226(a) without an individualized custody determination either prior to or contemporaneously with his arrest violated his Fifth Amendment procedural and substantive due process rights and several provisions of the APA related to agency decision-making. The Government maintains that Mr. Basboga is lawfully detained under Section 1226(a). It also argues that Mr. Basboga needs to exhaust his administrative remedies before filing a habeas petition in federal court. On September 29, 2026, the Parties appeared for oral argument in the case to discuss several issues that I identified as needing further clarity in their briefing. During argument, Mr. Basboga (through counsel) abandoned his APA claims.

## II. LEGAL STANDARD

28 U.S.C. § 2241 grants federal district courts the authority to review the legality of immigration-related detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). The district court may grant a writ of habeas corpus when the petitioner is "in custody under or by color of the authority of the United States … in violation of the Constitution or laws

or treaties of the United States[.]" 28 U.S.C. §§ 2241(c)(1), (c)(3). It is the petitioner's burden to show that his detainment violates the Constitution or federal law. *See id.* § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941). In that same vein, courts recognize that it is the petitioner's burden to prove facts entitling him to release from custody. *Goins v. Brierley*, 464 F.2d 947, 949, 949 n.4 (3d Cir. 1972) (listing cases).

## III. ANALYSIS

Mr. Basboga conceded his claims under the APA, and it is unclear to me whether he means to abandon his substantive due process claim as well. During oral argument, counsel vacillated between substantive and procedural due process, blurring the lines between the claims and relying primarily on procedural due process case law and principles. Because it is unclear to me whether counsel meant to concede this claim in addition to the APA claims, and because I can resolve this case on procedural due process grounds, I focus solely on the procedural due process claim.

### A. Exhaustion

Habeas petitioners ordinarily must exhaust their administrative remedies under Section 2241. *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000). However, the statute itself does not contain an exhaustion requirement, making exhaustion under Section 2241 prudential rather than mandatory. *Id.*; *see also McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). Courts will excuse exhaustion where: (1) the administrative remedies would be futile; (2) the agency's actions "clearly and unambiguously violate statutory or

constitutional rights"; or (3) the administrative procedure at issue "is clearly shown to be inadequate to prevent irreparable injury." *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988).

In this case, the Government conceded at oral argument that Mr. Basboga's could not exhaust his due process claims before an immigration judge. (Tr. at 17.) On its own, that concession might be enough for me to excuse exhaustion. But I don't have to rely just on the concession because the concession was well-founded, and requiring Mr. Basboga to exhaust his administrative remedies would be futile. Mr. Basboga challenges on procedural due process grounds the process through which ICE detained him pursuant to Section 1226(a). Exhaustion "is not always required when the petitioner advances a due process claim." *Khan v. Attorney Gen.*, 448 F.3d 226, 236 n.8 (3d Cir. 2006) (citation modified). "'If the argument, stripped of its due process language, could have been made before and adjudicated by the BIA, then it must be exhausted as any other claim." *Okorafor v. Att'y Gen. of United States*, 787 F. App'x 808, 810 (3d Cir. 2019) (citing *Bonhometre v. Gonzales*, 414 F.3d 442, 448 (3d Cir. 2005)). A claim is available before the BIA if it is: (1) "within the jurisdiction of the BIA to consider and implicate[s] agency expertise," and (2) within the agency's capability to grant "the remedy sought by" the noncitizen. *Bonhometre*, 414 F.3d at 447.

The BIA does not have authority to adjudicate constitutional issues like Mr. Basboga's due process challenge. *See Qatanani v. Att'y Gen. United States of Am.*, 144

F.4th 485, 499–500 (3d Cir. 2025); *Mudric v. Att'y Gen. of U.S.*, 469 F.3d 94, 98 (3d Cir. 2006). Mr. Basboga raises constitutional errors that he claims ICE committed through the process by which it detained him, not the merits of its custody decision. Thus, Mr. Basboga's invocation of due process is not a semantic reframing of an argument that belongs in immigration court. It is, instead, a constitutional challenge to the initial process that he received. It is, instead, an argument beyond any IJ's authority. Requiring Mr. Basboga to exhaust his due process claims in front of a tribunal that does not have authority to adjudicate them would be futile. *See Khan*, 448 F.3d at 236 n.8; *Qatanani*, 144 F.4th at 499–500.

**B. Procedural Due Process**

The Due Process Clause of the Fifth Amendment prohibits the federal Government from depriving any person of "life, liberty, or property without due process of law." U.S. Const. amend. V. At the heart of the liberty that the Due Process Clause protects is freedom from government custody, detention, and other forms of physical restraint. *Zadvydas*, 533 U.S. at 690. That liberty applies to "all persons" within the United States, including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693 (quoting *Plyler v. Doe*, 457 U.S. 202, 210 (1982)).

I am not reviewing the decision to detain Mr. Basboga because, as the Supreme Court recognizes, "detention during deportation proceedings" is a "constitutionally valid

aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003). Instead, I only ask whether the process DHS used to detain Mr. Basboga satisfies the Constitution.

The Government concedes that when ICE arrested Mr. Basboga on August 31, 2026, it did so under Section 1225(b)(2)(A). (Tr. at 38.) However, the Third Circuit's *Buele Morocho* decision, released three days before Mr. Basboga's arrest, made clear that noncitizens in Mr. Basboga's position could not be detained under that provision of the INA. *See* 2026 WL 2546223, at *7. The Government therefore illegally detained Mr. Basboga on August 31, 2026. At argument, counsel for the Government suggested that there was "confusion" in the wake of the Third Circuit's decision that led to Mr. Basboga's detention (Tr. at 10), but that doesn't matter. DHS was on notice of the ruling as soon as it came out, and any actions contrary to the Third Circuit's ruling after that time were illegal. As a result, I must ask two questions: (1) is it possible for the Government to cure its initial illegal detention under Section 1225, and (2) did the Government cure its illegal detention of Mr. Basboga in this case. I first address whether cure is possible.

**1. Initial detention violation and cure potential**

Federal courts recognize the ability to remedy violations of due process rights through subsequent curative methods in several contexts. For example, a state may cure a procedural deprivation by later providing a procedural remedy. *See Bonilla v. City of Allentown*, 359 F. Supp.3d 281, 297 (E.D. Pa. 2019), *as amended* (Apr. 19, 2019). An inmate is not deprived of procedural due process where an administrative appeal cures a prior

disciplinary hearing's procedural defects. *See Russell v. Scully*, 15 F.3d 219, 222 (2d Cir. 1993), *as modified on denial of reh'g* (Jan. 3, 1994). An agency can cure a due process violation resulting from inaction on a petition by ruling on that petition. *See McCoy v. United States*, 758 F. Supp. 299, 302 (E.D. Pa. 1991).

In the context of habeas petitions, "[t]he Supreme Court "has repeatedly stated that federal courts may delay the release of a *successful* habeas petitioner in order to provide the State an opportunity to correct the constitutional violation found by the court." *Henderson v. Frank*, 155 F.3d 159, 168 (3d Cir. 1998) (emphasis added). Moreover, government agencies, such as ICE, may cure procedural deficiencies by withdrawing prior action and then following proper procedure." *Gudino v. Lowe*, No. 1:25-CV-00571, 2026 WL 526366, at *6 (M.D. Pa. Feb. 25, 2026) (citing *Soc'y Hill Towers Owners' Ass'n v. Rendell*, 210 F.3d 168, 179 (3d Cir. 2000)). This accords with the principle of the habeas inquiry, which "is whether Petitioner is *presently* in violation of the Constitution or laws or treaties of the United States." *Zhuno-Livicura v. Jamison*, No. 26-CV-07255, 2026 WL 2936515, at *3 (E.D. Pa. Sept. 30, 2026) (citation modified) (emphasis added). In sum, I will not order Mr. Basboga's release based on an "alleged arrest defect" if his custody is now lawful. *See id.* (citing *Cocha Cocha v. Tsoukaris*, No. 26-cv-9857, 2026 WL 2806733, at *3 (D.N.J. Sept. 18, 2026)); *Frisbie v. Collins*, 342 U.S. 519, 522 (1952)).

**2. Curing Mr. Basboga's detention**

Although the Attorney General's authority to grant bail is broad, *see Carlson v. Landon*, 342 U.S. 524, 540 (1952), it is not limitless. Section 1226(a)'s language affirms the Attorney General's broad authority by providing that "[o]n a warrant issued by the Attorney General," a noncitizen "may be arrested and detained pending a decision" on whether he is to be removed from the United States. 8 U.S.C. § 1226(a). However, the discretionary language outlining that the Attorney General "may" arrest a noncitizen provides limitation because it implies that there needs to be some level of individualized determination made. *See id.* Indeed, the Supreme Court has interpreted similar "may" language in other provisions of the INA to require the Attorney General to make "some level of individualized determination." *See I.N.S. v. Nat'l Ctr. for Immigrants' Rts., Inc.*, 502 U.S. 183, 194 (1991) (analyzing 8 U.S.C. § 1252(a)). That begs two questions: when to make the determination and what level of individualization is necessary.

The individualized custody determination required under Section 1226(a) need not occur before detention, but it should nonetheless be prompt. *See Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 278 (3d Cir. 2018). Detention under Section 1226(a) may eventually become unreasonably prolonged, presenting courts with a separate due process issue. *Id.* Although Mr. Basboga seems to suggest that the determination occur before detention (Tr. at 36), I disagree. The statute and implementing regulations foreclose this argument, as they provide an immigration officer has discretion to "release" a noncitizen if he proves he is eligible for bond. Simple logic dictates that to

release a noncitizen, he must first be in custody. *See* 8 C.F.R. § 1236.1(8); *see also O.F.C. v. Almodovar*, No. 25-CV-9816 (LJL), 2026 WL 74262, at *6–7 (S.D.N.Y. Jan. 9, 2026).

The regulations also clarify the level of individualized determination required: "[a]ny officer authorized to issue a warrant of arrest *may*, in the officer's discretion, release" a qualifying noncitizen if the noncitizen "demonstrate[s] … that such release would not pose a danger to property or persons" and he is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8) (emphasis added). The regulations therefore provide for an individualized custody determination following arrest, at which point immigration officers consider whether to release a noncitizen based on a showing that he is not a danger to the community or a flight risk. *See id.* § 1236.1(c)(8). Several district judges in this court and elsewhere have reached a similar conclusion. *See e.g., Dos Reis v. McShane*, No. CV 26-3775, 2026 WL 1746649, at *4 (E.D. Pa. June 17, 2026); *Hernandez, v. Blanche, et al.*, No. CV 26-6195, 2026 WL 2569475, at *4 (E.D. Pa. Aug. 31, 2026); *Gopie v. Lyons*, No. 25-CV-05229-SJB, 2025 WL 3167130, at *3 (E.D.N.Y. Nov. 13, 2025).

The record before me demonstrates that ICE did not make the required individualized determination about Mr. Basboga. The I-213 Form that ICE provided Mr. Basboga does not include an individualized determination about him; it just notes that a bed was available for his detention. (Presumably, the agents didn't do more at the time because they were invoking section 1225(b), so they didn't think they needed provide a reason.) The availability of bed space is not an individualized determination about Mr.

Basboga under Section 1226(a). That finding contains no connection to whether Mr. Basboga is a danger to the community or a flight risk, nor does it address any other issue that might impact ICE's exercise of its discretion under the statute. Indeed, it fails to undertake an individual examination of him in any sense. Judge Henry has reached a similar conclusion with respect to a finding based on available bed space, and I find her logic persuasive. *See Lopez-Abello, v. Jamison, et al.*, No. CV 26-6752, 2026 WL 2981935, at *2 (E.D. Pa. Oct. 5, 2026). Thus, the I-213

The I-286 Notice of Custody Determination Form also does not qualify as an individualized determination. That form states only that ICE detained Mr. Basboga pursuant to Section 1226(a) and offers him the opportunity to request a bond hearing. (ECF No. 5-1 at 1.) It does not provide an explanation about why ICE chose to detain Mr. Basboga. But a "statement of reasons must reveal reasoning, and not simply present conclusions." *Marshall v. Lansing*, 839 F.2d 933, 943 (3d Cir. 1988). While one might infer from the I-286 that someone made an individual determination, it's really a logical leap, not a reasonable inference, to make that conclusion. It's equally possible that someone checked the detention box reflexively, without thinking about Mr. Basboga's individual situation. Due Process, however, demands some individual determination and that ICE be able to show its work.

Although the Government has offered Mr. Basboga a bond hearing before an IJ, that is not enough to cure its initial failure. The later bond hearing should offer an

opportunity to redetermine what ICE has already determined, so the bond hearing does not cure ICE's lack of an initial, individualized determination. See *Dos Reis*, 2026 WL 1746649, at *3; *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025). Additionally, the regulations confirm that a bond hearing before an immigration judge occurs "*[a]fter* an initial custody determination." 8 C.F.R. § 1236.1(d)(1) (emphasis added). The determination made concerning bond revocation at a hearing before an immigration judge is a determination separate from the custody determination that an immigration officer makes. *See id.* And without DHS conducting a proper initial custody determination, there is nothing that Mr. Basboga can ask an IJ to redetermine. Accordingly, a later bond hearing before an IJ cannot serve as an adequate remedy for the requirement that DHS make an individualized custody determination. *See Dos Reis*, 2026 WL 1746649, at *3; *Diallo v. Jamison*, No. CV 26-4895-KSM, 2026 WL 2547269, at *3 (E.D. Pa. Aug. 28, 2026). To hold otherwise would be to offer ICE a roadmap to ignore the statutory requirement of an initial custody determination by falling back on bond hearings before IJs.

**3. *Matthews v. Eldridge* balancing**

To determine whether a government action deprived an individual of due process, courts balance three factors: (a) the private interest affected by official action; (b) the risk of erroneous deprivation of that interest and the probable value of additional safeguards; and (bc) the Government's interest, including the burden placed on it to provide the

additional safeguards. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). All three of the *Mathews* factors weigh in Mr. Basboga's favor.

As to the first factor, the private interest affected here is the most significant liberty interest that exists—freedom from imprisonment. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). In the United States, liberty is the status quo, and detention prior to or without trial is "the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Detention, no matter the purpose, is a significant deprivation of liberty requiring due process protection. *Jones v. United States*, 463 U.S. 354, 361 (1983). The first *Mathews* factor weighs in Mr. Basboga's favor.

As for the second factor, the lack of an individualized custody determination poses a dangerous risk of erroneously depriving Mr. Basboga of his liberty. I have recognized that "[t]he lack of any individualized assessment creates a high risk of error." *Kashranov v. Jamison*, No. 2:25-CV-05555-JDW, 2025 WL 3188399, at *5 (E.D. Pa. Nov. 14, 2025); *see also Restrepo v. Jamison*, 823 F. Supp. 3d 529 (E.D. Pa. 2026). Accordingly, the probable value of making individualized custody determinations is high. I further note that conducting an individualized custody determination does not require DHS to implement additional safeguards to avoid the risk of erroneous deprivation; the INA's regulations provide petitioners with the opportunity to obtain their release by showing they are neither a danger to the community or a flight risk. *See* 8 C.F.R. § 1236.1(c)(8). DHS need

only allow for the opportunity already created by the applicable law. The second *Mathews* factor weighs in Mr. Basboga's favor as well.

Finally, I acknowledge the Government's interest in preventing danger to the community and ensuring that noncitizens appear at future immigration proceedings. However, the Government must nonetheless follow the law. Making individualized custody determinations should address its concerns under Section 1226(a). *See Dos Reis*, 2026 WL 1746649, at *5; *Hernandez*, 2026 WL 2569475, at *5. At the same time, requiring the Government to conduct individualized custody determinations would impose minimal burden. The text of the INA and its regulations delineate the proper detention process under Section 1226(a); it is not a burden on the Government to follow a process that statute and regulation require. *See* 8 U.S.C. § 1226(a)–(b); 8 C.F.R. §§ 1236.1(c)(8), (d)(1), (d)(3). The third *Mathews* factor weighs in favor of Mr. Basboga.

### C. Remedy

Habeas is "above all, an adaptable remedy," with its precise application and scope "depending upon the circumstances." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008). At its core, habeas is a remedy for unlawful detention. *Munaf v. Geren*, 553 U.S. 674, 693 (2008). "The typical remedy" for an unlawful detention is release. *Id.* (citing *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)). The need for release is particularly clear in cases like this because a later immigration court hearing would not "provide an adequate remedy for the unconstitutional initial deprivation." *Dos Reis*, 2026 WL 1746649, at *5; *Dzehtisarou*

*v. Mullin*, No. CV 26-5060, 2026 WL 2211392, at *6 (E.D. Pa. July 31, 2026). I will therefore order Mr. Basboga's immediate release from ICE custody. Should the Government seek to re-detain him under Section 1226(a), i§§t must make the individualized custody determination that the provision requires.

## IV. CONCLUSION

I will grant Mr. Basboga's petition on the grounds that he is unlawfully detained under 8 U.S.C. § 1226(a) and order his immediate release. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

October 9, 2026